## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GARY MAXSON,

          Plaintiff,

          v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

          Defendant.

CIVIL ACTION NO. 3:21-cv-00214

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, Gary Maxson, seeks judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.  BACKGROUND

On March 23, 2018, Maxson protectively filed a claim for disability insurance benefits.  His claim was initially denied by state agency reviewers on September 4, 2018. The plaintiff requested an administrative hearing, which was held as a video hearing on October 23, 2018, before administrative law judge Sharda Singh (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Joseph Atkinson. The plaintiff was represented by counsel at the hearing. On March 15, 2019, Maxson protectively filed a claim for supplemental security income. The supplemental security claim was accelerated. Each claim asserted a disability onset date of January 30, 2017.

On April 10, 2020, the ALJ denied Maxson's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Maxson was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Maxson had not engaged in substantial gainful activity since his alleged disability onset date. At step

two, the ALJ found that Maxson had the severe impairments of: major depressive disorder, unspecified bipolar disorder, anxiety disorder, cannabis use disorder, obesity, and osteoarthritis of the left knee. At step three, the ALJ found that Maxson did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Maxson's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Maxson had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with the following limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He is able to understand, remember, and carry out simple, routine, repetitive, non-complex work tasks in a low-stress environment, defined as one with occasional decision-making, changes in work setting, and use of judgment. He is limited to only occasional interaction with

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

supervisors, coworkers, and the general public.
(Tr. 15.)

In making these factual findings regarding Maxson's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive she found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Maxson was unable to perform his past relevant work as a bartender (DOT 312.474-010), customer service representative (DOT 239.362-014), machine operator II (DOT 619.685-062), construction worker I (DOT 869.664-014), or pipeliner (DOT 899.684-026).

At step five, based on the RFC and on testimony by the vocational expert, the ALJ concluded that Maxson was capable of performing jobs that exist in significant numbers in the national economy, including

> mail clerk (DOT 209.687-426), a light exertion unskilled job (SVP 2), with approximately 12,259 jobs in the national economy[;]
>
> marker II (DOT 920.687-126), a light exertion unskilled job (SVP 2), with approximately 23,150 jobs in the national economy[; and]
>
> photocopy machine operator (DOT 207.685-014), a light exertion unskilled job (SVP 2), with approximately 17,917 jobs in the national economy.

(Tr. 22.) Based on this finding, the ALJ concluded that Maxson was not disabled for social security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on December 15, 2020, making the ALJ's April 2020 decision the final decision of the Commissioner subject to judicial review by this court.

Maxson timely filed his complaint in this court on February 5, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence

and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Maxson asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate Maxson's mental health impairments at step three; and (2) the ALJ failed to properly evaluate Maxson's mental and physical impairments in formulating the residual functional capacity.[3]

---

[3] We note that the plaintiff's brief identified three issues on appeal, stating the third issue as "The ALJ erred in assessing the testimony of the vocational expert." In support of this issue, the plaintiff alleges that, while the ALJ accepted the VE's testimony regarding past work and current jobs in the national economy, the ALJ rejected or failed to consider the VE's testimony regarding time off-task, absent, or late. (See Doc. 15, at 14-15.) However, the RFC in the ALJ's decision—which is identical to the hypothetical RFC upon which the VE testified regarding the plaintiff's past relevant work and other jobs in the national economy—did not include off-task and absent behavior. (Admin. Tr. 15, 76-77.) When an ALJ formulates an RFC which does not include off-task behavior or absences, the ALJ is not required to address how off-task behavior or absences would affect the plaintiff's employment, even if the ALJ asked questions of the VE regarding absences and off-task behavior. Therefore, rather than an issue related to the ALJ's assessment of the VE's testimony, the plaintiff's third alleged issue will be considered as an

*(continued on next page)*

## A. Evaluation of Mental Health Impairments at Step Three

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate Maxson's mental health impairments at step three.

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("listing of impairments"), describes, for each major body system, the severity of impairment that is severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education or work experience. 20 C.F.R. § 404.1525(a), 416.925(a). At step three of the sequential evaluation process, the ALJ considers whether the combination of the claimant's medically determinable impairments meets the severity of one of the impairments in the listing of impairments. 20 C.F.R. § 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant has an impairment that meets the twelve-month duration requirement and meets or equals all the criteria of an impairment in the listing of impairments, the claimant is found disabled. 20 C.F.R. § 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

_____

allegation that the ALJ erred in failing to find that the plaintiff would be off-task or absent in the RFC, which is part of the second issue listed above.

However, to qualify for benefits by showing that an impairment, or combination of impairments, meets a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not enough. *Id.*

To be found unable to work due to the mental health impairments in Listing 12.04, which is the listing under which the plaintiff alleges the ALJ should have found him disabled, a claimant must provide medical documentation of the symptoms for depressive disorder or bipolar disorder *and* either a serious and persistent impairment, which is rare, or "extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." Listing 12.04. A claimant has an "extreme limitation" if he is "not able to function" in one of the above areas "independently, appropriately, effectively, and on a sustained basis." Listing 12.00(F)(2)(e). A claimant has a "marked

limitation" if his functioning in one of the above areas "independently, appropriately, effectively, and on a sustained basis is seriously limited." Listing 12.00(F)(2)(d). A claimant does not meet the listings if his functioning in an "area independently, appropriately, effectively, and on a sustained basis" is "fair" (a "moderate limitation") or is "slightly limited" (a "mild limitation") or if he has no limitation. Listing 12.00(F)(2)(a)-(c).

The plaintiff specifically alleges that the ALJ erred in finding that the plaintiff had a mild limitation in the ability to adapt and manage himself and a moderate limitation in interacting with others. Adapting or managing oneself

> refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

Listing 12.00(E)(4). Interacting with others

> refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples

include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

Listing 12.00(E)(2). For both areas, the examples are illustrative and not all examples must be documented to demonstrate a limitation. Listing 12.00(E)(2), (4).

Here, in her decision, the ALJ stated:

In interacting with others, the claimant has a moderate limitation. The claimant testified that due to his severe depression, he has had a difficult time maintaining social relationships with friends and family. However, the consultative examiner noted the claimant was cooperative and related adequately. He was able to maintain appropriate eye contact. However, he reported limited socialization aside from his close relationship with his mother (Exhibit 5F p. 2-3). Indeed, his treatment records also indicate that the claimant is generally cooperative on exams with appropriate social skills. However, the record also reflects some difficulty in maintaining a relationship with his ex-girlfriend, the mother of his child, extended [f]amily members, and past employers. He reported not responding well to being corrected and working around others increases his anxiety (Exhibit 9F p. 2-3, 9) . . . .

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant does have a history of significant depression, mood instability, and anxiety, with hospitalizations for suicidal ideation (Exhibits 2F, 7F, and 9F). He has reported decreased motivation in attending to his activities of daily living. However, he lives independently and is able to attend to basic self-care needs. He can care for his son when he has visitation. He does chores and shops. He generally presents well-groomed on exams (Exhibits 5F and 9F).

(Tr. 14-15.)

The plaintiff argues that the ALJ erred in finding the plaintiff's limitation was moderate in interaction with others because the plaintiff testified that he has difficulties dealing with people who are not his friends, mother, or son. (Doc. 15, at 10-11).

Regarding the ALJ's finding that the plaintiff's limitation in interacting with others was moderate, the plaintiff alleges only that the ALJ erred because the ALJ disregarded the plaintiff's testimony. However, an ALJ may disregard the claimant's subjective testimony if the record contains contrary medical evidence. *Dieffenbach v. Saul*, No. CV 19-4948, 2020 WL 2793958, at *5 (E.D. Pa. May 29, 2020) (citing *Mason v. Shalala*, 994 F.2d 1058, 1068 (3d Cir. 1993)). An ALJ is not required to accept a claimant's testimony in full; an ALJ is merely

required to explain his or her reasoning for rejecting part or all of a claimant's testimony. *Turby v. Barnhart*, 54 F. App'x 118, 121 (3d Cir. 2002) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)). Here, the ALJ explained that she considered the plaintiff's testimony that he "had a difficult time maintaining social relationships" and had "limited socialization," difficulty "maintaining a relationship with his ex-girlfriend," and issues with correction and working around others. (Tr. 14.) However, the ALJ provided the following additional details in her analysis of the plaintiff's ability to interact with others: "[T]he consultative examiner noted the claimant was cooperative and related adequately. He was able to maintain appropriate eye contact . . . . [H]is treatment records also indicate that the claimant is generally cooperative on exams with appropriate social skills." (Tr. 15.) Because the ALJ cited medical evidence contrary to the plaintiff's hearing testimony, the ALJ was entitled to be unpersuaded by the plaintiff's testimony. Therefore, we cannot find that the ALJ erred in finding the plaintiff has only moderate limitations in interacting with others.

The plaintiff also argues that the ALJ erred in finding the plaintiff's limitation mild in adapting and managing himself because the plaintiff

"was hospitalized during the relevant period for in-patient psychiatric treatment," has "reiterated suicidal feelings since that time despite medication and therapy," "lost a job in his family business because he could not adapt and manage himself," and the plaintiff on some days "cries uncontrollably, has panic and anxiety attacks without provocation[,] and spirals downward into a pit of despair." (Doc. 15, at 10.)

However, the ALJ explained her reasoning for finding that the plaintiff had a mild limitation when the ALJ stated:  "[The claimant] lives independently and is able to attend to basic self-care needs. He can care for his son when he has visitation. He does chores and shops. He generally presents well-groomed on exams. (Exhibits 5F and 9F)." (Tr. 14-15.) We review the Commissioner's decision to determine whether it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Here, we cannot find that the ALJ erred in finding the plaintiff's

limitations in adapting and managing himself to be mild in light of the evidence that the plaintiff lives alone, cares for his son during visitation, cooks, does his laundry, cares for two dogs and a cat, shops, and performs other chores, and is appropriately groomed at appointments.

Accordingly, we find that the ALJ's evaluation of the mental health impairments is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## B. Evaluation of Mental and Physical Impairments for the Residual Functional Capacity Determination

The plaintiff also contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate Maxson's mental and physical impairments in formulating the residual functional capacity. Specifically, the plaintiff alleges that the ALJ failed to consider his back pain, knee pain, migraines, and anxiety with regard to the plaintiff's ability to maintain a static posture (such as sitting or standing), climb ramps and stairs, balance, stoop, kneel, crouch, crawl, adapt to changes, interact with coworkers and the general public, and work without time spent off-task, late, or absent. (Doc. 15, at 11-15.) The plaintiff alleges that his back pain affects his ability to stoop and that the vocational expert testified that the jobs which the ALJ found the plaintiff

could perform would not be available to a person unable to stoop. (Doc. 15, at 11.) Further, the plaintiff contends that, because the ALJ found the plaintiff's back pain and migraines as non-severe at step two, the ALJ did not account for these impairments in the RFC determination.

As an initial matter, we note that we review the ALJ's decision to determine whether it is supported by substantial evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A single piece of evidence will not satisfy the substantiality test if the Secretary [or ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence." *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). When "reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

When completing an RFC assessment, "the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments." *Onley v. Colvin*, No. 1:13-CV-2833, 2015 WL 1513909, at *5 (M.D. Pa. Mar. 31, 2015) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). However, at steps one through four and the RFC determination, the claimant bears the initial burden of demonstrating the existence of one or more medically determinable impairments that prevent him or her from engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.  Furthermore, a "medically determinable physical . . . impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. The impairment must be established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source, not on an individual's statement of symptoms." *Robert E. v. Comm'r of Soc. Sec.*, No. 1:20-CV-06882-NLH, 2021 WL 5277193, at *5 (D.N.J. Nov. 12, 2021).

Here, the ALJ did not state that the plaintiff's back pain and migraine headaches were medically-determinable impairments. Instead,

the ALJ stated: "[T]he record does not reflect any neurological consultations for [migraines or headaches], with only conservative treatment at this time . . . . [T]here is no testing, imaging, or other objective finding to show any such disorder of the back consistent with symptoms of back pain." (Tr. 13). Therefore, despite the lack of specific language in the decision, the ALJ found that the impairments of migraines and back pain were not medically-determinable. An ALJ is only required to consider medically-determinable impairments during the RFC assessment. Therefore, we find that the ALJ's evaluation of plaintiff's back pain and migraines are supported by substantial evidence and was reached upon correct application of the relevant law.

The plaintiff also argues that the ALJ failed to consider his knee pain and anxiety regarding his ability to maintain a static posture (such as sitting or standing), climb ramps and stairs, balance, stoop, kneel, crouch, crawl, adapt to changes, interact with coworkers and the general public, and work without time spent off-task, late, or absent. (Doc. 15, at 11-15.) However, the plaintiff fails to explain exactly how his knee pain and anxiety should result in a more restrictive RFC. The ALJ clearly considered the plaintiff's knee pain (Tr. 18) and anxiety (Tr. 16-17).

Accordingly, we find that the ALJ's evaluation of plaintiff's knee pain, anxiety, back pain, and migraines is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Maxson was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: September 26, 2022        _**s/Joseph F. Saporito, Jr.**_
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge